UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DARRYL D. AGLER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 1:14-CV-099 JD |
| WESTHEIMER CORPORATION, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This is a trademark infringement action over two marks associated with Stratotone guitars. The Court granted partial summary judgment in favor of plaintiff Darryl D. Agler, finding that the undisputed facts established that Mr. Agler owned priority to one of those marks. The defendant, Westheimer Corporation, has now moved to certify an interlocutory appeal under 28 U.S.C. § 1292(b), purporting to identify nine questions of law that merit review by the court of appeals prior to entry of final judgment in this case.

A court may only certify an order for an interlocutory appeal when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). The statute thus imposes four criteria, all of which must be met to justify certification: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). The Seventh Circuit has narrowly construed the types of issues appropriate for certification: "'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether

the party opposing summary judgment had raised a genuine issue of material fact." *Id.* at 676. In other words, the issue must be a "pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record." *Id.* at 677.

In its motion, Westheimer does not contest the legal standards the Court articulated in its order granting summary judgment, much less the meaning of any statutory provision or regulation. Rather, it takes issue with how the Court applied the factual record to those well-accepted legal standards, and essentially constructs its purported questions of law around those factual issues. For example, Westheimer's proposed questions include: "Does the moving party asserting abandonment of a trademark meet its burden of establishing non-use when the record shows uncertainty as to when sales ceased;" and "Does a party asserting abandonment of a trademark meet its burden of establishing intent not to resume use when the record shows that use resumed."[1] These questions do not qualify as "pure questions of law" that are appropriate for certification of an interlocutory appeal, so Westheimer's motion is denied.[2]

Even if the Court were to construe Westheimer's motion as a motion for reconsideration, the motion would not be well taken, as it rests on mischaracterizations of the Court's order and misunderstandings of the law. The holding that Westheimer contests was that the undisputed

---

[1] Other proposed questions are nonsensical, such as "Can a grant of summary judgment be based on an inference being drawn in favor of the moving party based upon hearsay."

[2] The Court further notes that it does not believe that an interlocutory appeal would speed up this litigation, as required under the fourth element. This case is now ready to be set for trial, and an appeal at this point would undoubtedly delay that trial. Westheimer argues that certifying an appeal now might avoid the possibility of having to conduct a second trial on abandonment should the court of appeals find that summary judgment was not properly granted. However, doing so would guarantee that two separate rounds of appeals would be required to fully present any issues in this case on appeal (the interlocutory appeal and an appeal of the final judgment), whereas a second trial would only be required if the court of appeals reverses the summary judgment. Thus, the Court believes that denying the interlocutory appeal is the most efficient course for this litigation.

2

facts established that Westheimer abandoned the Stratotone mark after its use of that mark in 2001 or 2002. "A trademark is abandoned if its 'use in commerce' has been discontinued with no intent to resume its use." *Specht v. Google, Inc.*, 747 F.3d 929, 934 (7th Cir. 2014); 15 U.S.C. § 1127. As the party asserting abandonment, Mr. Agler had the burden of establishing both non-use and intent not to resume use. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003); *Vision Ctr. Nw., Inc. v. Vision Value, LLC*, 673 F. Supp. 2d 679, 686 (N.D. Ind. 2009). However, nonuse for three consecutive years creates a presumption of abandonment. *Specht*, 747 F.3d at 934; *Zelinski*, 335 F.3d at 639. Once that presumption attaches, the opposing party must produce evidence excusing the nonuse or demonstrating that within three years of the last use, it formulated an intent to resume use. *Specht*, 747 F.3d at 934; *Zelinski*, 335 F.3d at 639.

A number of Westheimer's proposed questions for certification suggest that summary judgment was improper because Mr. Agler did not identify the exact date on which the use of the Stratotone mark ceased. However, while Mr. Agler did not produce evidence of the precise date when the use of the mark ceased, he did provide evidence that any use had ceased by the end of 2002 at the latest. Thomas Malm testified that in 2001, he was working for M.B.T. International, which was producing the Stratotone guitars under a license. He testified that he left that company in July 2001, and that MBT did not continue selling Stratotone guitars for "very long at all, if at all," after that point. [DE 41-3 p. 37, 39]. Mr. Malm also testified that he and Charles Subecz, who owned the mark, started pursuing plans to sell the guitars as part of a new venture after MBT ceased its sales. However, those plans came to an abrupt halt at some point in 2002, when they dropped the project and parted companies. Westheimer produced no evidence to contradict that testimony or to suggest that Stratotone guitars were sold past that point. Accordingly,

3

construing the facts in the light most favorable to Westheimer, the non-movant, the Court found that the use of the Stratotone mark ceased at the very latest by January 1, 2003. Mr. Agler also submitted evidence that the next actual use of the Stratotone mark was in January 2008, five years later—which, again, Westheimer did not contradict. Thus, resolving all of the uncertainties in Westheimer's favor, the undisputed facts still showed that there was a period of non-use of well over three years.

That period of non-use triggers a presumption of abandonment. *Specht*, 747 F.3d at 934; *Zelinski*, 335 F.3d at 639. At that point, contrary to the assumptions underlying other of Westheimer's proposed questions, Westheimer—not Mr. Agler—bore the burden of offering evidence excusing the nonuse or demonstrating that, within three years of the last use, it formulated an intent to resume use. *Specht*, 747 F.3d at 934; *Zelinski*, 335 F.3d at 639; *Vision Ctr.*, 673 F. Supp. 2d at 686 ("If the presumption is triggered, the owner of the mark 'has the burden of producing evidence of either actual use during the relevant period or intent to resume use.'" (quoting *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000))). Westheimer did not do so. Rather, it provided evidence that it used the Stratotone mark in January 2008—over five years after the last use—and that it filed an intent-to-use application for the Stratotone mark on March 17, 2007—over four years after the last use. To rebut a presumption of abandonment, though, it must show that it formulated an intent to resume use "within three years of nonuse." *Specht*, 747 F.3d at 934. To conclude that these facts showed an intent to resume use by the end of 2005 would require pure speculation. *See Specht*, 747 F.3d at 935 (finding that use of a mark in December 2007 was insufficient to preserve rights in a mark that had last been used in 2002, since "by then it was too late" and a new user had already

4

appropriated the mark). Accordingly, absent any genuine dispute of fact on this issue, summary judgment on the issue of abandonment was proper.

Finally, Westheimer asserts that the Court improperly relied on hearsay. Specifically, Mr. Malm testified that Mr. Subecz told him about a bad experience he had before with a lawsuit over a brand, and said that "if anything like that ever happens again, he's pulling the plug and he's not going to be involved." [DE 41-3 p. 34–35]. Thus, according to Mr. Malm, when MBT sent Mr. Subecz a letter threatening suit over artwork related to the Stratotone brand, Mr. Subecz dropped the Stratotone project and was not heard from again. Westheimer argues that Mr. Subecz's statement to Mr. Malm is an out-of-court statement offered for the truth of the matter asserted, and is thus barred as hearsay. Westheimer fails to acknowledge, though, that such a statement is admissible under Rule 803(3), which states that evidence of a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is not excluded by the rule against hearsay. Fed. R. Evid. 803(3). In telling Mr. Malm his intent or plan to drop any project that became involved in a legal dispute, Mr. Subecz (the declarant) was describing his then-existing state of mind, so Mr. Malm's testimony about that conversation is not excluded under the hearsay rule. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 694–95 (7th Cir. 2011).[3] Thus, that evidence could properly be considered at summary judgment.

For those reasons, Westheimer's motion for leave to file an interlocutory appeal [DE 45] is DENIED.

---

[3] Regardless, because Westheimer failed to file a motion to strike this evidence, as required under the local rules, it waived its ability to object to this evidence. N.D. Ind. L.R. 56-1(e) ("Any dispute regarding the admissibility of evidence should be addressed in a separate motion in accordance with L.R. 7-1.").

SO ORDERED.

ENTERED: May 12, 2016

                                                        /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court